**INTERSTATE COMMERCE COMMIS-
SION, Plaintiff,**

v.

**The NELSON COOPERATIVE MARKET-
ING ASSOCIATION, a corporation, Ed-
ward L. Neugebauer, T. D. Nelson, and
G. C. Nelson, Defendants.**

**Civ. A. No. 9738.**

United States District Court
W. D. Oklahoma.

Sept. 4, 1962.

William W. Guild, I.C.C., Fort Worth, Tex., for plaintiff.

O. B. Martin, Oklahoma City, Okl., for defendants.

STEPHEN S. CHANDLER, Chief Justice.

This cause having come on for consideration by the court, upon complaint of the plaintiff and upon the subjoined consent of the defendants, The Nelson Cooperative Marketing Association, hereafter referred to as "Nelson Cooperative," a corporation, Edward L. Neugebauer, T. D. Nelson, and G. C. Nelson, the court, upon consideration of the said pleadings and the representations of facts of the parties hereto, now makes and enters the following:

## FINDINGS OF FACT

### 1.

This action was brought by the plaintiff under Section 222(b) of the Interstate Commerce Act (Title 49, § 322(b), U.S.Code), and under the general laws and rules relating to suits in equity arising under the Constitution and laws of the United States. The plaintiff seeks to enjoin the defendants from transporting property by motor vehicle in interstate

commerce, for compensation, until such time as defendants shall have obtained the necessary operating authority to engage in such transportation as required by Part II of the Interstate Commerce Act (Title 49 U.S.Code § 301 et seq.). Nelson Cooperative was and is engaged in the transportation of property in interstate commerce by motor vehicle on public highways between points in the continental United States, including points within the Western District of Oklahoma and within the jurisdiction of this court. It performed such transportation under the color of the so-called "agricultural cooperative exemption," Section 203(b) (5) of the Interstate Commerce Act (Title 49 U.S.Code § 303 (b) (5)) which exempts cooperative associations, as defined in the Agricultural Marketing Act, from the economic regulations of Part II of the Interstate Commerce Act.

## 2.

Nelson Cooperative is incorporated under the "Cooperative Marketing Association Act" of Oklahoma (Title 2 Okl. Stats.1941 § 361 et seq.) with its principal offices located at 3545 Northwest 10th Street, Oklahoma City, Oklahoma. It is a nonstock corporation with a five member Board of Directors constituting its entire voting media. At this time, the members of the Board of Directors are: Edward L. Neugebauer, vice-president and general manager; T. D. Nelson, president; O. B. Johnston, dispatcher; Eunice Nelson, secretary; and Jim Mooney, local farmer. Eunice Nelson and Jim Mooney do not participate in the affairs of the Association.

Actually, the operations are controlled and managed by Edward L. Neugebauer. T. D. Nelson and O. B. Johnston are salaried employees. Edward L. Neugebauer, T. D. Nelson, and O. B. Johnston are not engaged in farming activities except as to interests in some cattle and farm land unrelated to the operations of Nelson Cooperative. Through so-called "agency agreements," Neugebauer has associated himself and Nelson Cooperative with known truckers, such as Ralph Kapke and Robert Groves of Iowa, Walter Smith of Denver, Colorado, Paul Graves of Kansas City, Kansas, and an unnamed agent at Los Angeles, California. These agents receive commissions based on a percentage of the traffic obtained by them for Nelson Cooperative, except for the agent at Los Angeles who receives a weekly salary. Any farming activities which such agents may engage in are unrelated to the operations of Nelson Cooperative.

## 3.

Nelson Cooperative commenced operations in April, 1961. Its sole activity has been and is the transportation of property by motor vehicle, for compensation. The predominant portion of the traffic handled by Nelson Cooperative is moving in interstate commerce. The traffic consists of manufactured or processed items, e. g., canned goods and processed meats, as well as "exempt" commodities"[1] such as livestock, produce, grain, and other agricultural commodities. The major portion of the transportation is performed for canneries, meat packing houses, produce dealers, and other persons who are not eligible for membership in Nelson Cooperative because they are not engaged in farming operations. Most of the transportation of nonexempt manufactured or processed items involves the movement of canned goods from canneries to wholesale and retail grocers and processed meats between packing houses, meat brokers, and other dealers in meats.

In excess of 90 percent of the total value of such transportation is performed with or for nonmembers or registered members who are not eligible due to the nature of their operations. In this

1. Section 203(b) (6) of the Interstate Commerce Act (49 U.S.Code § 303(b) (6), provides that the for-hire transporation of agricultural commodities, livestock, or fish shall not be subject to the economic regulations of Part II of the Interstate Commerce Act.

connection, Nelson Cooperative does not attempt to determine whether shippers submitting traffic to it are engaged in farming operations. It is customary for Nelson Cooperative to solicit such shippers as nonvoting members by means of an application form incorporated into the shipping documents and accept them as members upon payment of a nominal fee. As a result, the membership is swollen with persons who are not farmers and, therefore, ineligible for membership in the association.

4.

Nelson Cooperative was not created for the purpose of promoting the merchandising of farm products of its members. It is not and has not been engaging in the transportation to effect the marketing of its members' farm products or to effect the supplying of farm business service and farm supplies to such members.

5.

There was not in force and there is not now in force with respect to Nelson Cooperative or any of its officers, directors, or members, a certificate of public convenience and necessity or a permit or any other form of authority issued by the Interstate Commerce Commission authorizing such operations.

## CONCLUSIONS OF LAW

1.

This court has jurisdiction of the parties and the subject matter of this action by virtue of the provisions of Part II of the Interstate Commerce Act, particularly Section 222(b) thereof (Title 49, § 322(b), U.S.Code, under the general laws and rules relating to suits in equity arising under the Constitution and laws of the United States.

2.

Whether the operations of Nelson Cooperative are entitled to the so-called "agricultural cooperative exemption," Section 203(b) (5) of the Interstate Commerce Act, depends on whether it qualifies under the Agricultural Marketing Act (Title 12, §§ 1141–1141j, U.S.Code Section 1141j defines the term "cooperative associations" as it is used in the Agricultural Marketing Act. Section 1141 declares the purpose of the Marketing Act to be the promotion of the effective merchandising of agricultural commodities through producer-owned and producer-controlled cooperative associations.

For Nelson Cooperative to come within the meaning of the Agricultural Marketing Act, it must be owned and controlled by farmers acting together for their mutual benefit to promote the merchandising of their farm products by means of "processing, preparing for marketing, handling, and/or marketing the farm products of persons so engaged, and also means any association in which farmers act together in purchasing, testing, grading, processing, distributing, and/or furnishing farm supplies and/or farm business services." Such an association either must grant members equal voting privileges or restrict its dividends to 8 percent per annum. In any case, such an association shall not deal in farm products, farm supplies, and farm business services with or for nonmembers in an amount greater in value than the total amount of such business transacted by it with or for members.

3.

A "farmer" is a person, natural or corporate, actively engaged in farming operations to some extent. Persons or corporations engaged in businesses such as canneries, meat packing houses, dealers in produce, and other like businesses, do not qualify as farmers solely because farm products are used by them as raw material in their manufacturing processes. Similarly, manufacturers and dealers in farm implements and farm supplies do not qualify as farmers.

merely because their products may be used on a farm or by a farmer. Business transacted with such nonfarming entities is not member business for the purposes of the third proviso of Section 1141j. See, Machinery Haulers Association, et al., v. Agricultural Commodity Service, 86 M.C.C. 5.[2] The views of the Commission are persuasive and entitled to special consideration, particularly in light of the absence of legal precedents. Levinson v. Spector Motor Company, 330 U.S. 649, 672, 67 S.Ct. 931, 91 L.Ed. 1158; McLean Trucking Company v. United States, 321 U.S. 67, 87–89, 64 S.Ct. 370, 88 L.Ed. 544; United States v. American Trucking Association, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345.

■ Nelson Cooperative does not qualify as a cooperative association in each of the following respects. First, it is not a producer-controlled association. Second, its primary purpose is not the marketing of farm products of, or the furnishing of farm business services to its members. Third, it is dealing in services with or for nonmembers in an amount greater in value than that transacted with or for *eligible* members, contrary to the third proviso of Section 1141j, Title 12 U.S.Code.

### 4.

Notwithstanding the above findings and conclusions, the transportation of canned goods from canneries to grocers and chain stores, of processed meats from packing houses to meat dealers, of cheese from brokers to distributors, and other transportation which is not necessary to farming activities of member farmers are activities in which even a bona fide cooperative association may not rightfully engage.

Under the precepts of the Agricultural Marketing Act, a cooperative association must act for the mutual benefit of its members in their capacities as farmers and in furtherance of their marketing of farm products or purchase of farm supplies and farm business services. Transportation performed by such an association must directly benefit the farming operations of its members regardless of whether the services are performed for members or nonmembers. This is not the case here.

This decision is not adverse to Interstate Commerce Commission v. Jamestown Farmers Union Federated Cooperative Transp. Assn., 151 F.2d 403, wherein the Eighth Circuit ruled that transportation performed by a cooperative association may connect at origin or destination with a member cooperative association as well as a farm. In that case, there was no question of the status of the association or the eligibility of its members and all of the transportation was performed for eligible members.

### 5.

The operations of Nelson Cooperative as described in the above Findings of Fact constitute those of a common carrier by motor vehicle as defined in Section 203(a) (14) of the Act (Title 49, § 303(a) (14), U.S.Code, and its transportation of property other than so-called "exempt commodities" is in violation of Section 206(a) of the Act (Title 49 § 306(a), U.S.Code), and as such subject to be enjoined by the court under the express provisions of said Act; and, that the relief prayed for by the plaintiff against Nelson Cooperative should be granted.

The court does not consider it necessary to issue an order restraining the individual defendants at this time. The cause is dismissed with respect to defendant G. C. Nelson.

**2.** The citation refers to Motor Carrier Cases, the official publication of the decisions of the Interstate Commerce Commission. The decision of the Commission was rendered on May 3, 1961, and petitions for reconsideration were denied by the full Commission on April 1, 1962. There has been no appeal to the federal courts.